IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JENISE MORRIS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-0542-CV-W-HFS |
| | ) |
| HUMANA HEALTH PLAN, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Before the court is plaintiff's motion to remand this case pursuant to 28 U.S.C. § 1447. Also, before the court is defendant's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion to remand will be granted; thereby rendering the motion to dismiss moot.

Factual and Procedural Background

Plaintiff, on behalf of others similarly situated, filed suit against defendant, Humana Health Plan, Inc., in the Circuit Court of Jackson County, Missouri, at Kansas City. Essentially, plaintiff claimed that Humana routinely engaged in a widespread pattern and practice of unlawfully asserting reimbursement rights on healthcare benefits paid to healthplan enrollees by a third-party tortfeasor under provisions of the Federal Employee Health Benefits Act "FEHBA." Plaintiff asserted claims for unjust enrichment, conversion, and injunctive relief. Pursuant to 28 U.S.C. § 1446(b), Humana timely removed the action to this court and claimed that federal jurisdiction existed under 28 U.S.C. § 1331 (federal question), and under 28 U.S.C. § 1442(a)(1) (the federal officer removal statute).

Applicable Law

A. Federal Question Jurisdiction

"The Federal Employees Health Benefits Act of 1959 (FEHBA), 5 U.S.C. § 8901 et seq. (2000 ed. And Supp. III), establishes a comprehensive program of health insurance for federal employees." Van Horn v. Arkansas Blue Cross and Blue Shield, 629 F.Supp.2d 905, 907 (E.D.Ark. 2007); quoting, Empire HealthChoice v. McVeigh, 547 U.S. 677 (2006). "The Act authorizes the Office of Personnel Management" (OPM) to contract with private carriers to offer federal employees an array of health-care plans." Id. Humana has such a contract.

Humana claims that this court has federal question jurisdiction because this case is governed by federal common law pursuant to 28 U.S.C. § 1331. Specifically, Humana argues that this case presents a substantial federal question; that is, whether it acted properly under FEHBA in subrogating plaintiff's claim.

Under 28 U.S.C. § 1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Manske v. Rocky Mountain Holding Co., 2007 WL 119165 * 5 (D.Neb). A defendant may remove a state court claim to federal court if the claim originally could have been filed in federal court, and the well-pleaded complaint rule provides that a federal question must be presented on the face of the properly pleaded complaint to invoke federal court jurisdiction. Id. Additionally, "federal question jurisdiction will lie over state-law claims that implicate significant federal issues." Id; quoting, Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). Therefore, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id; quoting, Grable, at 313.

A defendant is not permitted to inject a federal question into an otherwise state-law claim

and thereby transform the action into one arising under federal law. Id. "Congress has long since decided that federal defenses do not provide a basis for removal." Id. "Thus, a case may not be removed to federal court on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Id. "To permit removal on the basis of a federal defense would deprive the plaintiff of the right to be the master of his cause of action." Id; quoting, Caterpillar Inc. v. Williams, 482 U.S. 386, 399 (1987). In opposing remand, a defendant bears the burden of establishing that federal subject matter jurisdiction exists over the plaintiff's case, and if the defendant proves that any claim within the complaint supports federal question jurisdiction, the entire case may be removed to federal court including any state-law claims arising from the same core of operative facts. Manske, 2007 WL 119165 at, *6. However, all doubts as to the propriety of exercising federal jurisdiction over a removed case must be resolved in favor of remand. Id.

In Manske, the plaintiff filed suit in state court against several defendants alleging that her husband's death in a helicopter crash was the result of a faulty tail rotor system that occurred during an attempted emergency landing. Plaintiff alleged claims for negligence as well as a claim in Count V for failure to preserve, retain and maintain certain records relating to the subject aircraft. Manske, at *6. Removal of an entire case to federal court is permissible if any claim within the complaint supports federal question jurisdiction, including any alleged state-law claims arising from the same core of operative facts. Id. It was upon this basis, the allegation asserted in Count V, that the defendants claimed supported removal; and argued that if there was a duty to maintain the records, it was governed by the Federal Aviation Act. Id. Conversely, the plaintiff contended that the claim was based on breach of a common law duty of care to retain the records. Id.

The defendants in Manske, like Humana at bar, looked to the reasoning expressed in Grable

in support of their argument that the complaint in each instance raises a substantial federal question. In Grable, a former landowner brought a quiet title action in state court against a tax sale purchaser, and alleged that the purchaser's record title was invalid because the IRS had failed to provide the plaintiff with proper notice pursuant to federal statute. Manske, at * 7; citing, Grable, 545 U.S. at 310. The Court held that the plaintiff's superior title claim was premised on the IRS's failure to give adequate notice, which made "[t]he meaning of the federal tax provision [] an important issue of federal law that sensibly belongs in a federal court." Id; citing, Grable, at 315. Thus, the Manske court held that since the plaintiff's claims were primarily related to the cause of the helicopter crash and any attendant liability, as opposed to federal regulations presented in Grable, any defenses presented by defendants based on federal law would not prevent remand of the case to state court. Id, at *8.[1] The court also found that the application and interpretation of one or two record-keeping regulations did not equate to states supplementing federal safety aviation regulations. Id. Thus, the issue lacked substantial federal interest to justify federal question justification over the plaintiff's state law claims. Id. Similarly, here, Humana claims that a verdict for plaintiff would invalidate a federal government contract program and significantly frustrate OPM's ability to enforce and administer FEHBA contracts. However, sufficient evidence has not been presented which would demonstrate a substantial federal issue, and on the face of the complaint a federal question has not been presented. West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 748 F.Supp.2d 580, 585-86 (S.D.W.Va. 2010) (defendant failed to demonstrate the existence of an "important issue of federal law that sensibly belongs in a federal court."); see also, Empire HealthChoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 704 (2006) (few cases can be "squeezed into the slim category Grable

---

[1] Unless, of course, "the pre-emptive force of a statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Manske, at * 8.

exemplifies").

B. Federal Officer Removal Statute

Humana also claims the presence of federal jurisdiction based on the federal officer removal statute pursuant to 28 U.S.C. § 1442(a)(1). Specifically, Humana contends that in seeking reimbursement it "acted under" the direction of a federal officer, and it has colorable federal defenses, i.e. official immunity, conflict preemption/government-contractor defense, and express preemption. According to Humana, the OPM exercises supervisory authority over it as it administers the Plan for enrollees under a contract negotiated and interpreted by OPM. (Suggestion in Opposition to Remand: Exh. 1, Declaration of Joan Schumer stating that the standard contract requires Humana, under certain circumstances, to assert subrogation rights).

§ 1442 allows removal to a federal forum of any civil or criminal action against "[t]he United States or of any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." West v. A & S Helicopters, 751 F.Supp.2d 1104, 1109 (W.D.Mo. 2010). Four elements are required to be demonstrated: (1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between its actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a "person" within the

meaning of the statute. Id, at 1109.² The words 'acting under' are broad," and the Supreme Court "has made clear that the statute must be 'liberally construed.' " Watson v. Philip Morris Cos., Inc., 551 U.S. 142, 147 (2007). "But broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." Id, at 147.

Humana argues that as a private contractor, it provided assistance to federal officers that went beyond simple compliance with the law. However, in an opinion written by Justice Breyer which reversed the Eighth Circuit, the Court held that even though a federal agency directs, supervises, and monitors a company's activities in considerable detail that fact does not bring the company within § 1442(a)(1)'s scope and thereby permit removal. Id, at 142. ³ Looking at the statute's history and prior cases, the Court found that the basic purpose of § 1442 is to protect the Federal Government from interference with its "operations" where, for example, a state arrested and brought to trial Government officers and agents for alleged state law offenses committed while acting within the scope of their authority. Id. Justice Breyer found that precedent and statutory purpose made clear that the private person's "acting under" must involve an effort to assist, or to help carry out, the federal superior's duties or tasks. Id, at 143. Such aid does *not* include simply

---

²The only factor in dispute at bar is whether Humana acted under the direction of a federal officer.

³In Watson, a putative class commenced suit in state court against Philip Morris, a cigarette manufacturer, alleging that the defendant designed its cigarettes to deliver more tar and nicotine that its labels suggested, in violation of the Arkansas Deceptive Trade Practices Act. Watson v. Philip Morris Companies, Inc., 2003 WL 23272484 (E.D.Ark.). Upon removal, Judge Eisele ruled that because the complaint attacked Philip Morris' use of the government's method of testing cigarettes, the petitioners were actually suing Philip Morris for "acting under" the Federal Trade Commission "FTC." Id. The Eighth Circuit affirmed on appeal, emphasizing the FTC's detailed supervision of the cigarette testing process and likening the case to others in which the lower courts permitted removal by heavily supervised Government contractors. Watson v. Philip Morris Companies, Inc., 420 F.3d 852 (2005).

*complying* with the law. Id.

Here, the fact that Humana voluntarily entered into a mutually agreed upon contract with the OPM to administer healthcare benefits to federally employed enrollees, does not rise to the level of a relationship defined as "acting under a federal officer." Id, (a private firm's compliance or noncompliance with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under a federal official," even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored). Contrary to Humana's contention, its relationship with the OPM is distinguishable from that found in Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387 (5th Cir. 1998). For there, the defendant chemical company's relationship with the government went beyond simple compliance with the law; instead, it provided the government with a product used to help conduct a war, i.e. Agent Orange. Watson, 551 U.S. at 153. Similar to the defendant in Watson, the parties at bar have simply engaged in the usual regulator/regulated relationship, which cannot be construed as bringing Humana within the statute's terms.

Humana contends that OPM exercises supervisory authority over it, as it pertains to the reimbursement policy, because the plan it administers to plan enrollees is governed by a contract negotiated and interpreted by OPM. However, the same argument was raised by the defendant insurer in Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross/Blue Shield of New Jersey, 518 F.Supp.2d 128 (D.N.J. 2007), and rejected by that court which noted findings in other cases where it was held that a provider's duty to abide by contract terms does not necessarily amount to "control" over the Plan provider. Id, at 135, n.4; citing, Arnold v. Blue Cross & Blue Shield of

Tex., Inc., 973 F.Supp. 726, 740 (S.D.Tex. 1997)[4]; superseded by statute (on other grounds, i.e. complete preemption) as stated in, Blue Cross Blue Shield of Tennessee, Inc. v. Griffin, 2004 WL 1854165 (E.D.Tenn.). Thus, in cases where the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to section 1442(a)(1) removal. Id, at 135. This somewhat deflates Humana's contention that, "as a practical matter, Humana has no ability to negotiate the terms of its contracts with OPM." (Suggestions in Opposition to Remand: Exh. 1, Declaration of Joan Schumer). It has been held that FEHBA providers "freely enter [] the market, in which ... carriers 'compete vigorously' with other providers within the pool of federal employees. Orthopedic Specialists, at 135. As recently held by Judge Noce in Nevils v. Group Health Plan, Inc., 4:11-CV-00588, June 15, 2011 (E.D.Mo.), compliance with federal laws, rules, or regulations is not "acting under the direction of a federal official," and "[a] contrary determination would expand the scope of [§ 1442(a)(1)] considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries."). Nevils, at 8; citing, Watson v. Philip Morris Cos., Inc., 551 U.S., at 153. Under the circumstances presented at bar, Humana has failed to demonstrate that it acted under the direction of a federal officer, and, therefore, this court does not have subject matter jurisdiction under the federal officer removal

---

[4]The Arnold court noted that Humana offered no evidence that its contract negotiations with OPM involved anything other than arms-length bilateral give and take ... OPM negotiates with various insurance carriers to obtain the best benefits coverage packages for federal employees ... OPM contracts with approximately 400 health benefits plans throughout the country, and all federal employees can choose among at least seven plans in which to enroll ... differences among the plans results from the fact that OPM enters separate negotiations with each carrier. Orthopedic Specialists, 518 F.Supp.2d at 135, n.4.

Relatedly, the 5th Circuit noted that FEHBA providers "freely enter [] the market, in which ... carriers 'compete vigorously' with other providers within the pool of federal employers." Id, citing, Houston Community Hospital v. Blue Cross Blue Shield of Texas, Inc., 481 F.3d 265, 272 (5th Cir. 2007). Because the terms of the Master Contract are freely entered into, the mere existence of such terms does not evidence a level of "control" sufficient to provide a basis for removal. Id.

statute, pursuant to 28 U.S.C. § 1442(a)(1).[5]

Nevertheless, Humana argues, that, alternatively, removal was proper under the federal officer statute based on three federal defenses: official immunity; conflict preemption/government-contractor defense; and express preemption. In support of its immunity defense, Humana relies on Holton v. Blue Cross and Blue Shield of South Carolina, 56 F.Supp.2d 1347, 1351 (M.D.Ala. 1999), and claims that it has a colorable defense because it has put forth in issue the question of whether it was acting as an agent of the United States.[6] Although the court in Holton found that the defendant insurer adequately put the question in issue of whether it was acting as an agent of the United States so as to provide a colorable federal defense of sovereign immunity, the courts in both Van Horn and Orthopedic Specialists, declined to follow. While reviewing this issue, the court in Orthopedic Specialists, noted that a provider's duty to abide by contract terms does not necessarily amount to "control" over the Plan provider. Id, at 135.

In Houston Community Hospital v. Blue Cross and Blue Shield of Tex., Inc., 481 F.3d 265 (5th Cir. 2007), the plaintiff hospital rendered medical treatment to patients covered by the defendant Blue Cross who misrepresented the level of health care coverage of each patient and then refused

---

[5]Similarly unavailing is Humana's reliance on cases decided prior to Watson; i.e. Holton v. Blue Cross 7 Blue Shield of S.C., 56 F.Supp.2d 1347 (M.D.Ala. 1999), and Alabama Dental Association v. Blue Cross and Blue Shield of Alabama, Inc., 2007 WL 25488 (M.D.Ala). Moreover, in finding federal officer removal jurisdiction, these courts did not discuss whether the defendants were under the direct and detailed control of federal agencies. Orthopedic Specialists, 518 F.Supp.2d at, 138, n. 8.

[6]The Holton court looked at a federal court which found that a sufficient showing of acting "under the color" of the United States has been made where the party puts in issue the questions of official justification and immunity. Holton, at 1351; citing, Group Health Inc. v. Blue Cross Assoc., 587 F.Supp. 887, 890 (S.D.N.Y. 1984). As well as another federal circuit that determined that a statement in the removal petition that the plaintiff's allegations were based on acts done by the Humana under color of his office as an employee of the United States while he was acting in the scope of his employment was sufficient to give rise to a colorable defense. Id, at 1351-52; citing, Jamison v. Wiley, 14 F.3d 222 (4th Cir. 1994).

to pay accordingly. Id, at 267. The court looked at the legislative history of FEHBA which indicated Congress's intent to establish a health benefits program for federal employees so as to compete for the best talent with private companies. Id, at 271. With that in mind, Congress sought to set up a partnership between OPM and private carriers with OPM being responsible for the overall administration of the program while sharing the day-to-day operating responsibilities with the employing agencies and the insurance carriers. Id.[7] The court therefore reasoned that Congress did not with the FEHBA hand off a government function; rather Congress decided to get into the insurance business, and not every activity in which government might decide to engage is a function of the government in private hands. Id. The court also noted, and rejected the argument posed by Blue Cross that a grant of immunity would further ensure uniformity in plan administration. Id, at 274. In reliance on Westfall v. Ervin, 484 U.S. 292, 295 (1988), the court held that a court should not expand the scope of governmental immunity unless the interests involved greatly outweighed the costs. Id, at 275; superseded by statute (on other grounds, i.e. federal employee liability) as stated in, Franka v. Velasquez, 332 S.W.3d 367 (Tex. 2011). Immunity comes at a "great cost" because an "injured party with an otherwise meritorious tort claim is denied compensation simply because he had the misfortune to be injured by a federal official. Id. In sum, Humana has not established that it acted either under the direction of a federal officer or as an agent of the United States, and is, therefore, not entitled to assertion of an official immunity defense.

    Humana also claims that as a government contractor it is entitled to the government-

---

[7]The court also found guidance from then-Judge Ginsburg who in Doe v. Devine, 703 F. 2d 1319 (D.C.Cir. 1983), examined Congress's choice to use government contractors, rather than the government itself, to provide FEHBA health benefits and determined that Congress designed the program as it did in order to "ensure maximum health benefits for employees 'at the lowest possible cost to themselves and to the Government.' " Houston Com. Hosp., 481 F.3d at, 271; citing, Doe, at 1330 n. 41. Rather than one plan administered by the Government, Congress created a system in which insurers compete vigorously for employees' subscription dollars. Id.

contractor defense in support of federal officer removal. Humana contends that under the two-part test of Boyle v. United Techs. Corp., 487 U.S. 500, 507 (1988), this case is controlled by federal common law. In the Boyle decision the Court held that courts may create federal common law only when the operation of state law would: (1) significantly conflict with (2) uniquely federal interests. Boyle, at 507-08. Humana contends that under Boyle, a unique federal interest may be implicated in cases involving a government contractor's rights and obligations under its contract with the United States. The Court discussed examples of cases found to involve unique federal interests. These are cases in which such rights and obligations involve circumstances where liability to a third-party arises out of performance of the contract, or in suits filed in state court alleging civil liability of federal officials for actions taken in the course of their duty. Boyle, at 505. A unique federal interest has also been found where an independent contractor is performing its obligation under a procurement contract. Id, at 505-06. This is also true where the authority to carry out the project was validly conferred; that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will. Id, at 506. However, where "litigation is purely between private parties and does not touch the rights and duties of the United States," federal law does not govern. Id.

Humana claims that a unique federal interest is demonstrated by Congress's intent to provide uniform treatment of federal employees enrolled in plans under FEHBA as evidenced by the inclusion of an express preemption provision pursuant to 5 U.S.C. § 8902(m)(1).[8] Humana further claims that any application of Missouri's anti-subrogation law would significantly interfere

---

[8] It reads, in pertinent part: that "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supercede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."

with and ultimately defeat the implementation of a uniform standard.

In Empire HealthChoice v. McVeigh, 547 U.S. 677 (2006), the plan administrator commenced suit against a plan enrollee who, after recovering damages from a third party tortfeasor, refused to submit to the plan administrator previously paid medical costs. After careful consideration, and reference to the federal common law theory presented in Boyle, the Court ultimately held that while there existed a distinct federal interest in the health and welfare of federal workers, those interests did not warrant federal oversight of an insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court-initiated tort litigation. Empire, at 701.

A recent case in this circuit considered the question under circumstances factually similar to those at bar - where the plan enrollee commences suit to contest the obligatory reimbursement of medical costs upon receipt of damages from the third party tortfeasor - as opposed to a plan administrator claiming entitlement to reimbursement. In Van Horn v. Arkansas Blue Cross and Blue Shield, 629 F.Supp.2d 905, 910 (E.D.Ark. 2007), a provision of the Arkansas State Made Whole Doctrine provided that an insurer is entitled to enforce its contractual right of subrogation only *after* the insured has been fully compensated or "made whole" for his total loss. Id, at 910. The defendant insurer argued that this provision significantly conflicted with the Plan's reimbursement provision and frustrated the FEHBA objective of national uniformity in benefits and plan administration. Id, at 910-11.[9]  Judge Eisele, persuaded by Judge Posner's ruling in Blue Cross Blue Shield of Ill. v.

---

[9]The court noted that some states apply the "made whole" doctrine as a default rule but would permit the parties to contract out of it, i.e. Alabama, California, Mississippi, the District of Columbia, Louisiana, New Hampshire, Ohio, Oklahoma, Rhode Island, and West Virginia. Van Horn, 629 F.Supp.2d, at 911, n.8. While other states, including Arkansas, Minnesota, Nebraska, Tennessee, Utah, Wisconsin, and Montana apply the doctrine even if the parties have attempted to contract out of it. Id, at n.9.

Cruz, 495 F.3d 510, 514 (7th Cir. 2007), found that no federal-question jurisdiction existed because there was no unique federal interest at issue. Van Horn, 629 F.Supp.2d at 911-12. The court in Cruz, in reliance on the Supreme Court in Empire, noted a distinction between benefits and reimbursement, and concluded that the amount of benefits are determined by the health plan, and are, therefore, uniform across the states because they are unaffected by a common fund doctrine. Van Horn, at 912. In other words, any lack of uniformity that results by the effect of the common fund doctrine as to how much of a judgment or settlement proceeds an insured is permitted to retain, does not also result in a lack of uniformity in benefits. Van Horn, at 912. Consequently, under the two-part Boyle test, the court held that federal jurisdiction was lacking. Id.

Even more persuasive to me is the analysis by Judge (now Justice) Sotomayor in the decision affirmed by the Supreme Court. Empire HealthChoice Assur., Inc. v. McVeigh, 396 F.3d 136, 142 (2nd Cir. 2005). She acknowledged that "at a later stage of the proceedings, a significant conflict might arise" between New York state law and the federal interests underlying the federal statute. She stated, however, that "it would be up to the state court to apply federal common law." If a federal question were not disclosed in the plaintiffs' state court petition, removal might be barred. 396 F.3d at 143, n. 4. The Sotomayor views are of special interest here as they may suggest a continuing majority on the Supreme Court consistent with the Empire HealthChoice result. While the issues remain fairly debatable, I will join Judge Eisele in rejecting Humana's removal argument based on federal question jurisdiction.

Humana claims that under 5 U.S.C. § 8902(m)(1), as amended in 1998,[10] the

---

[10]In section 8902, Congress authorized the OPM to contract with insurance carriers to offer a variety of plans to federal employees, and included a preemption clause which states:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall

contractual subrogation provisions noted in the Plan preempt any state law that prohibits subrogation. Humana's reliance on this statute is misplaced. Under the doctrine of complete preemption, removal is appropriate if "the subject matter of a putative state law claim has been totally subsumed by federal law - such that state law cannot even treat on the subject matter. West Virginia Ex Rel. McGraw v. CVS Pharmacy, Inc., 748 F.Supp.2d 580, 583 (S.D.W.Va. 2010). When complete preemption exists, federal law provides the exclusive cause of action, and in essence "there is ... no such thing as a state-law claim." Id, at 583. To prove complete preemption, "a defendant must establish that the plaintiff has a 'discernible federal [claim]' and that 'Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong.' " Id.

However, a determination that federal law governs a cause of action does not necessarily confer removal jurisdiction. Weathington v. United Behaviorial Health, 41 F.Supp.2d 1315, 1319 (M.D.Ala. 1999). State courts have plenary jurisdiction and are competent to hear claims that require the application of federal law. Id. Federal question jurisdiction requires that the action arise under the Constitution, laws, or treaties of the United States, and in deciding whether a federal question exists, a court must apply the well-pleaded complaint rule whereby the court looks to the face of the complaint, rather than to any defenses asserted by the defendant. Id; citing, Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1978) (the general rule is that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption). Here, plaintiff has asserted claims for unjust enrichment, conversion, and injunctive relief which do not state a federal question on its face. Nonetheless, complete preemption, as an exception to the well-pleaded complaint rule" may give a court federal question jurisdiction, and it focuses on the intent of

---

supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans. West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 748 F.Supp.2d 580, 583 (S.D.W.Va. 2010); citing, 5 U.S.C. § 8902(m)(1).

Congress. Weathington, at 1319.[11]

On appeal to the Supreme Court subsequent to the amendment, the Court in Empire HealthChoice addressed this issue and noted that while FEHBA's preemption provision independently conferred federal subject matter jurisdiction, it concluded that section 8902(m)(1) "does not purport to render inoperative *any and all* state laws that in some way bear on federal employee-benefit plans." Id; quoting, Empire HealthChoice, 547 U.S. at, 697-98. The Court pointed out that the purpose of FEHBA's preemption provision and its accompanying regulations were to ensure that suits brought by beneficiaries for denial of benefits would land in federal court. Id; citing, Empire HealthChoice, at 696. However, if Congress intended the provision to also "encompass contract-derived reimbursement claims between carriers and insured workers, it would have been easy for Congress to say so;" which it did not do. Id, at 698. Thus, under the issue at bar between Humana and plaintiff as it relates to reimbursement, Humana fails to demonstrate a colorable defense under complete preemption.

Accordingly, it is hereby

---

[11] It is noted that due to an amendment to the preemption provision of FEHBA in 1998, some courts have held that the amendment broadening the scope of FEHBA's preemption language indicates Congress's intent that FEHBA completely preempt state law concerning federal employees' health coverage. Blue Cross Blue Shield of Tennessee, Inc. v. Griffin, 2004 WL 1854165 *2 (E.D.Tenn.); see also, Rievley v. Blue Cross Blue Shield of Tennessee, 69 F.Supp.2d 1028, 1034 (E.D.Tenn. 1999). The 1998 amendment eliminated the language restricting FEHBA's preemption to instances where state law was "inconsistent with" health insurance contracts. Rievley, at 133.
It is equally noted, however, that even after the 1998 amendment broadening FEHBA's preemptive scope, courts continued to deny removal based on a claim of complete preemption. Griffin, 2004 WL 1854165 at, * 2; citing, Blue Cross Blue Shield of Illinois v. Cruz, 2003 WL 22715815 * 6 (N.D.Ill.); declined to follow by, Blue Cross Blue Shield of Tennessee, Inc. v. Griffin, 2004 WL 1854165. Other courts that, like Cruz, have denied removal based on complete preemption subsequent to the 1998 amendment include, State Farm Indem. v. Forano, 227 F.Supp.2d 229, 238-239 (D.N.J. 2002); Empire HealthChoice Assurance v. McVeigh, 2003 WL 22171693 *3 (S.D.N.Y.).

ORDERED that plaintiff's motion to remand (ECF doc. 6) is GRANTED. The above captioned case is REMANDED to the Circuit Court of Jackson County, Missouri at Kansas City within twenty one (21) days from the date of this order.[12] It is further

ORDERED that defendant's motion to dismiss (ECF doc. 7) is DENIED as moot.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

November  2 , 2011

Kansas City, Missouri

---

[12] A similar decision was recently reached in *Jacks v. Meridian, Case No. 11-94, W.D.Mo.*, a matter strikingly similar to the case at bar. To the extent the two cases are parallel, it is noted that upon appeal the Petition seeking interlocutory relief, was denied. (Case No. 11-8023, Eighth Circuit).